IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SHARI ST. CLAIR, | ) | |
| | ) | |
| Plaintiff, | ) | CIVIL ACTION NO. 3:13-06 |
| | ) | |
| v. | ) | JUDGE KIM R. GIBSON |
| | ) | |
| PENNSYLVANIA DEPARTMENT OF CORRECTIONS; PENNSYLVANIA DEPARTMENT OF CORRECTIONS SCI LAUREL HIGHLANDS; PENNSYLVANIA DEPARTMENT OF CORRECTIONS SCI CAMP HILL; JEFFREY A. BEARD; JOHN E. WETZEL; J. BARRY JOHNSON; DAVID W. PITKINS; JOHN A. PALAKAVICH; and ANNETTE KOWALEWSKI, | ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

**MEMORANDUM AND ORDER OF COURT**

**I.   INTRODUCTION**

Plaintiff Shari St. Clair filed this civil rights action under 42 U.S.C. § 1983, alleging violations of the First, Fourth, and Fourteenth Amendments to the United States Constitution. The complaint involves two factual issues: (1) the decision of Pennsylvania Department of Corrections (DOC) officials to deny St. Clair contact visitation with her incarcerated fiancé; and (2) St. Clair's termination of employment at a DOC facility. Before the Court is a motion to dismiss, wherein Defendants challenge the sufficiency of the complaint under Fed. R. Civ. P 12(b)(6).  (ECF No. 4).  For the reasons that follow, Defendants' motion will be granted.

## II. JURISDICTION AND VENUE

The Court exercises subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1343. Venue is proper under 28 U.S.C. § 1391(b)(2) because a substantial portion of the events giving rise to the claims occurred in the Western District of Pennsylvania.

## III. FACTS

From 1999 to 2009, Shari St. Clair worked as a registered nurse at Pennsylvania Department of Corrections institution SCI Laurel Highlands. (Compl. ¶ 15). During this time, St. Clair developed a "platonic acquaintance relationship" with an inmate, Dennis Davis. (Id. ¶ 18). Shortly after Davis's release from SCI Laurel Highlands in 2003, Davis and St. Clair began living together. (Id. ¶ 20). They now have a young child and plan to marry. (Id. ¶¶ 21–22).

The dispute in this case arose after Davis's conviction of rape in 2009, for which a judge sentenced him to 10 to 20 years of imprisonment. (Compl. ¶ 28). St. Clair initially requested permission from DOC officials to visit and correspond with Davis, but those requests were denied in April 2009. (Id. ¶¶ 30, 32). According to St. Clair, however, she received telephone calls from Davis at her place of work between April and June 2009. (Id. ¶ 33).

In June 2009, St. Clair allegedly contacted Pennsylvania State Senator Richard Kasunic to "plead her case" for visitation and communication with Davis. (Id. ¶ 34). St. Clair further avers that, "in retaliation" for involving Senator Kasunic, DOC officials

initiated an investigation into St. Clair's contact with Davis. (*Id.* ¶ 35). This investigation ultimately led to St. Clair's termination of employment.

The disciplinary process began in August 2009, when DOC officials held a fact-finding meeting with St. Clair. (Compl. ¶ 38). At that time, officials found that St. Clair had violated DOC directives by communicating with Davis without permission, and a pre-disciplinary hearing was scheduled. (*Id.*). The pre-disciplinary hearing was held on August 17, 2009, and St. Clair was suspended without pay in late August 2009. (*Id.* ¶ 41). DOC officials eventually informed St. Clair in a November 10, 2009 letter that her nursing position was terminated, effective November 6, 2009. (*Id.* ¶ 42).

St. Clair sought reinstatement of her position by following the grievance process outlined in her termination letter. (*Id.*). In January 2010, a "First Step" meeting was held, at which time DOC officials refused to reinstate her position. (Compl. ¶ 44). St. Clair then presented her case at an "Accelerated Grievance Proceeding" on June 2, 2010. (*Id.* ¶ 45). But, according to St. Clair, she never received a written decision informing her of that proceeding's outcome. (*Id.* ¶¶ 46, 48, 49).

Despite the absence of a DOC written decision, a union representative apparently told St. Clair that her termination was "upheld" on appeal. (*Id.* ¶ 46). The union later informed St. Clair in a February 7, 2012 email—a "final confirmation" of dismissal—that she could be employed "anywhere in the Pennsylvania State system, but not at any correctional facility." (*Id.* ¶ 49). St. Clair avers that, without a written decision from the DOC, she was deprived of a "forum or procedure for redress of her claims." (*Id.*).

3

Since her dismissal, DOC officials have continuously denied her requests for physical visitation with Davis, though she has been granted "virtual visits." (Compl. ¶ 51). In January 2013, St. Clair initiated this § 1983 action by filing an 11-count complaint against the DOC, two DOC institutions, and certain DOC officials both in their official and individual capacities. St. Clair asserts that she has a constitutional right to contact visits with Davis under the First, Fourth, and Fourteenth Amendments. She also avers that her termination of employment amounted to unlawful retaliation, discrimination, and a deprivation of due process. In response, Defendants filed the instant motion to dismiss (ECF No. 4) under Fed. R. Civ. P. 12(b)(6). The motion is now ripe for disposition.

IV. **LEGAL STANDARD**

The Federal Rules of Civil Procedure require that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Federal Rule of Civil Procedure 12(b)(6) allows a party to seek dismissal of a complaint or portion of a complaint for failure to state a claim upon which relief can be granted. Although the federal pleading standard has been "in the forefront of jurisprudence in recent years," *Fowler v. UPMC Shadyside*, 578 F.3d 203, 209 (3d Cir. 2009), the standard of review is now familiar.

In determining the sufficiency of a complaint, a district court must conduct a two-part analysis. First, the court must separate the factual matters averred from the legal conclusions asserted. *Fowler*, 578 F.3d at 210. Second, the court must determine whether the factual matters averred are sufficient to show that the plaintiff has a "plausible claim

4

for relief." *Id.* at 211 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)). The complaint need not include "detailed factual allegations." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Moreover, the court must construe the alleged facts, and derive all inferences from those facts, in the light most favorable to the non-moving party. *Id.* at 228. Nevertheless, "[t]hreadbare recitals of the elements of a cause of action" do not suffice. *Iqbal*, 556 U.S. at 678. Rather, a complaint must present sufficient "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Sheridan v. NGK Metals Corp.*, 609 F.3d 239, 262 n.27 (3d Cir. 2010) (quoting *Iqbal*, 556 U.S. at 678). In other words, the plaintiff must allege facts that could, if established at trial, entitle her to relief. *Fowler*, 578 F.3d at 213.

## V. ANALYSIS

Defendants assert two main theories to support their motion to dismiss. First, with respect to contact visitation, Defendants argue that neither prisoners nor their family members have an inherent constitutional right to visitation. Second, with respect to St. Clair's employment claims, Defendants argue that she did not comply with the applicable statute of limitations. The Court now considers each of these arguments in determining whether St. Clair has established a plausible claim for relief.

A.   Contact Visitation—Counts I through IX of the Complaint

In Counts I through IX, St. Clair avers that the First, Fourth, and Fourteenth Amendments guarantee her the right to contact visitation with Davis.[1] In Count II, for example, St. Clair invokes the Fourth Amendment, arguing that Defendants violated her "privacy interest" in denying her ability to provide contact between her child and Davis, the child's biological father. (Compl. ¶ 67). St. Clair uses this same rationale in Count III to argue that Defendants violated her liberty interest under the Fourteenth Amendment. (*Id.* ¶ 73). Counts I through IV apply to all Defendants in their official capacities, whereas Counts V through IX apply to certain DOC employees as individuals.

The Court finds it unnecessary to discuss the constitutional contours of St. Clair's claims as stated in the first nine counts. Case law readily shows that "[c]onvicted prisoners, their family and spouses have no constitutional right to visitation." *Young v. Vaughn*, CIV. A. 98-4630, 2000 WL 1056444, at *2 (E.D. Pa. Aug. 1, 2000) (citing seven cases); *accord, e.g.*, *Neumeyer v. Beard*, 301 F. Supp. 2d 349, 351 (M.D. Pa. 2004), *aff'd*, 421 F.3d 210 (3d Cir. 2005); *Ratigan v. Trogvac*, 4:CV-08-1667, 2009 WL 648931, at *25 (M.D. Pa. Mar. 11, 2009); *Abuhoran v. Morrison*, CIV.A. 03-3091, 2005 WL 2140537, at *7 (E.D. Pa. Sept. 1, 2005) ("[C]ourts have uniformly held that the constitution does not confer a right to visitation upon prisoners and their family members.").

---

[1] From the face of the complaint, it appears that St. Clair is also attempting to assert constitutional claims on behalf of her minor child. The child is not a named party to this action, thus raising issues of standing. Although the analysis applied to St. Clair would likely apply with equal force to any potential claims she could raise as a guardian, the Court makes no findings in this regard.

Even if St. Clair could establish a constitutional right in this context, the DOC's decision would be upheld if it were "reasonably related to legitimate penological interests." *Turner v. Safley*, 482 U.S. 78, 89 (1987). The Supreme Court has outlined four factors in determining reasonableness:

> 1) a rational connection between the prison decision and the governmental interest supported; 2) the existence of alternative means of exercising the abridged right; 3) the impact of an accommodation of the abridged right on prison resources; and 4) the absence of alternatives for exercising the right at *de minimis* cost to penological interests."

*Young v. Vaughn*, CIV. A. 98-4630, 2000 WL 1056444, at *2 (E.D. Pa. Aug. 1, 2000) (citing *Turner*, 482 U.S. at 89–91).

Here, St. Clair was denied contact visitation with Davis because of her improper conduct while she remained an employee at SCI Laurel Hills. (ECF No. 5 at 13). St. Clair admits contacting Davis without permission. (Compl. ¶ 33). She was also aware that her actions violated DOC policy. (ECF No. 5 at 13) ("[E]mployees and former employees are on the list of 'Prohibited Visitors' under DOC policy, unless specifically permitted by the Superintendent of the institution where the inmate is housed."). Given these facts, this visit prohibition bears a reasonable relationship to legitimate penological interests in security. Furthermore, St. Clair and her child have alternative means of visitation with Davis: they participate in "virtual visits." (Compl. ¶ 51).

After construing the alleged facts and drawing all inferences in the light most favorable to St. Clair, the Court finds that St. Clair cannot maintain a plausible

7

constitutional violation for denied contact visitation with Davis. Counts I through XI are dismissed with prejudice, as leave to amend would be futile.

### B. St. Clair's Retaliation Claim—Count X of the Complaint

In Count X, St. Clair avers that Defendants Pitkins and Kowalewski retaliated against her because she sought political assistance from Senator Kasunic in her quest for visitation with Davis. (Compl. ¶¶ 103–07). Defendants argue that this claim should be dismissed as time-barred under the applicable statute of limitations. (ECF No. 5 at 7).

In suits brought under 42 U.S.C. § 1983, federal courts must apply the forum state's statute of limitations period for personal injury claims. *See Sameric Corp. of Del., Inc. v. City of Phila.*, 142 F.3d 582, 599 (3d Cir. 1998). The relevant period in Pennsylvania is two years. *See* 42 Pa. Cons. Stat. Ann. § 5524 (West 2010). The parties do not dispute the applicable statutory period but rather disagree on when the two-year period started to accrue. Although the relevant statutory period is a question of state law, "the accrual date of a § 1983 cause of action is a question of federal law that is *not* resolved by reference to state law." *Wallace v. Kato*, 549 U.S. 384, 388 (2007) (emphasis in original). According to federal common-law tort principles, the accrual date begins "when the plaintiff has 'a complete and present cause of action.'" *Wallace*, 549 U.S. at 388; *accord Kach v. Hose*, 589 F.3d 626, 634 (3d Cir. 2009).

In responding to Defendants' motion to dismiss, St. Clair does not make arguments specific to Count X of her complaint. Instead, St. Clair generally argues that equitable tolling should apply to her employment claims in view of the DOC grievance

8

procedure: "Plaintiff did not receive unequivocal notice that her grievance had failed to return her to state employ until February 2012. Despite her best efforts she could not get a straight answer about the eventual status of her grievance until that time." (ECF No. 14 at 11).

St. Clair's equitable tolling argument is irrelevant to her retaliation claim. To plead an actionable retaliation claim under the First Amendment, a plaintiff must allege three elements:

> (1) constitutionally protected conduct, (2) retaliatory action sufficient to deter a person of ordinary firmness from exercising his constitutional rights, and (3) a causal link between the constitutionally protected conduct and the retaliatory action.

*Thomas v. Independence Twp.*, 463 F.3d 285, 296 (3d Cir. 2006). Here, St. Clair filed suit on January 4, 2013. St. Clair avers that she sought political assistance from Senator Kasunic in late June 2009 and that the alleged retaliatory act occurred that same month. (Compl. ¶¶ 34, 35). On the face of the complaint, therefore, St. Clair knew of her possible retaliation claim more than three and one-half years prior to the commencement of this suit. Count X is thus barred by the statute of limitations and will be dismissed.

C.  **St. Clair's Fourteenth Amendment Claims—Count XI of the Complaint**

Count XI, the final count of the complaint, includes alleged violations of the Fourteenth Amendment. St. Clair avers that she was denied procedural due process with

regard to her state employment position.[2] She also avers that she was denied equal protection under the law because, although "similarly situated male employees were permitted to associate with their incarcerated family members," she and other female employees were denied that right because of their gender. (Compl. ¶¶ 110, 111).

With respect to procedural due process, the Court finds that St. Clair has no viable claim. Public employees who can be discharged only for cause are entitled to procedural due process in connection with the termination of their employment. *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 539 (1985). But "due process is [also] flexible and calls for such procedural protections as the particular situation demands." *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972). At minimum, then, a public employee is normally entitled to notice and an opportunity to be heard prior to being deprived of her property interest in employment. *See Loudermill*, 470 U.S. 532, 542 (1995); *Alvin v. Suzuki*, 227 F.3d 107, 121 (3d Cir. 2000).

St. Clair avers that she participated in a fact-finding meeting with at least one DOC official who found that she had violated DOC directives. (Compl. ¶ 38). Thereafter, St. Clair participated in a pre-disciplinary conference, affording her an opportunity to respond to the allegations. (*Id.* ¶¶ 40, 41). DOC officials then reviewed the findings from this conference and informed St. Clair in writing of her employment termination:

---

[2] To the extent St. Clair raises a procedural due process claim with regard to her denied contact visitation with Davis, the Court finds that St. Clair cannot assert an actionable claim. As discussed above, convicted prisoners and their family members have no constitutional right to visitation.

10

> You admitted that you spoke with inmate Davis by telephone and accepted collect telephone calls from inmate Davis even though you knew you were not permitted to have any contact with him. In fact, between April and July, 2009, you spoke to inmate Davis while he was in SCI Camp Hill 27 times without permission to do so. You stated that you didn't think you had to follow the order because you didn't think it was right. You also admitted that you attempted to circumvent the order to not have contact [*sic*] inmate Davis by trying to hide your identity by using a false name. You also admitted that on three occasions in April and May, 2009, you discussed with inmate Davis that you were not to have any telephone, mail, or visiting contact with him. Maintaining contact with an inmate after being denied approval to do so can have an adverse effect on the security of the institution. . . . Based upon the facts available in this case, I find that the charges [against you] have been substantiated.

(ECF No. 4-2 at 13).³ The letter further informed St. Clair that she could appeal the decision in accordance with her union agreement. (*Id.* at 14).

After receiving notice of termination, St. Clair filed a grievance with her union. (Compl. ¶ 43). St. Clair, a union representative, and DOC officials participated in a "First Step" meeting in February 2010. At that time, Defendants refused to reinstate her position. (*Id.* ¶ 44). In June 2010, St. Clair again participated in a grievance hearing, affording her a second opportunity to present her case. (*Id.* ¶ 45). At some point

---

³ Although St. Clair did not attach this termination letter to her complaint, the Court can rely on it in determining the merits of the instant motion to dismiss. In ruling on a motion to dismiss, a court generally may not consider matters extraneous to the pleadings. *See In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997). But a "document integral to or explicitly relied upon in the complaint may be considered without converting the motion [to dismiss] into one for summary judgment." *Id.* (quoting *Shaw v. Digital Equip. Corp.*, 82 F.3d 1194, 1220 (1st Cir. 1996)); *see also Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993) ("[A] court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document.").

afterwards, union representatives notified St. Clair that the DOC's decision was upheld; the union eventually informed her of this finding in writing. (*Id.* ¶¶ 46, 49).

Under these circumstances, St. Clair has not presented sufficient factual content to establish even a plausible procedural due process claim. In light of the pre-termination notice St. Clair received, the pre-termination hearing that was conducted, and the fact that St. Clair participated in a post-termination grievance hearing, the averred facts sufficiently show that the requirements of due process were met in this case. *See Lape v. Pennsylvania*, 157 F. App'x 491, 500 (3d Cir. 2005) (finding no procedural due process violation under similar circumstances).

As a final matter, Count XI of the complaint includes a Fourteenth Amendment equal protection claim. Specifically, St. Clair avers that male DOC employees were granted visitation with incarcerated family members of the opposite sex, but that she and other female DOC employees were denied similar access. (Compl. ¶ 110, 111). St. Clair has not been a DOC employee since 2009. (*Id.* ¶ 15). To the extent St. Clair asserts an equal protection claim based on events from 2009, her claim is time-barred by the statute of limitations.[4] To the extent St. Clair asserts a claim on behalf of current DOC employees, she has no standing to do so. *See Common Cause of Pennsylvania v. Pennsylvania*, 558 F.3d 249, 258 (3d Cir. 2009) (discussing standing requirements).

---

[4] *See* Part V.B (discussing the statute of limitations for this § 1983 action).

Because St. Clair has not stated an actionable Fourteenth Amendment claim in Count XI of the complaint, and it would be futile to permit leave to amend, the Court will dismiss this count with prejudice.

VI.   CONCLUSION

Shari St. Clair has not stated a claim upon which relief can be granted, and the Court will therefore grant Defendants' motion to dismiss (ECF No. 4). As discussed in this memorandum, each of the eleven counts in the complaint will be dismissed with prejudice because amending the complaint would not cure the deficiencies.

An appropriate order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| SHARI ST. CLAIR, | ) | |
| --- | --- | --- |
| | ) | |
| Plaintiff, | ) | CIVIL ACTION NO. 3:13-06 |
| | ) | |
| v. | ) | JUDGE KIM R. GIBSON |
| | ) | |
| PENNSYLVANIA DEPARTMENT OF CORRECTIONS; PENNSYLVANIA DEPARTMENT OF CORRECTIONS SCI LAUREL HIGHLANDS; PENNSYLVANIA DEPARTMENT OF CORRECTIONS SCI CAMP HILL; JEFFREY A. BEARD; JOHN E. WETZEL; J. BARRY JOHNSON; DAVID W. PITKINS; JOHN A. PALAKAVICH; and ANNETTE KOWALEWSKI, | ) ) ) ) ) ) ) ) ) ) | |
| | ) | |
| Defendants. | ) | |

## ORDER

NOW, this **24th** day of February 2014, for the reasons explained in the accompanying memorandum, it is **HEREBY ORDERED** that Defendants' motion to dismiss (ECF No. 4) is **GRANTED**.

It is **FURTHER ORDERED** that the complaint in this matter, in its entirety, is **DISMISSED** with prejudice. The Clerk of Court shall mark this case closed.

BY THE COURT:

KIM R. GIBSON
UNITED STATES DISTRICT JUDGE